UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY L. HAMILTON, CDCR #T-61263,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitation, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 21cv2032-CAB (AHG)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. § 1915(e)(2)** |

Plaintiff Danny L. Hamilton, a state prisoner incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this civil rights action under 42 U.S.C. § 1983. (ECF No. 1.)  He claims his federal constitutional rights to be housed under humane conditions of confinement, to be free from cruel and unusual punishment, to substantive and procedural due process, to freedom of personal liberty and to be free from false imprisonment have been violated because he should have been released from custody rather than subjected to the risk of exposure to the Covid virus at RJD, with which he became infected when he was housed in a cell with an inmate who tested positive for the virus at the same time Plaintiff tested negative.  (*Id.* at 3-5.)

1

## I. Screening pursuant to 28 U.S.C. §§ 1915(e)(2)

### A. Standard of Review

Because Plaintiff is a prisoner his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915(e)(2). Under that statute, the Court must *sua sponte* dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Allegations in the Complaint

Plaintiff alleges that Defendant Kathleen Allison, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), should have released him from

custody pursuant to California Government Code § 8658[1] when she became aware of the spreading of the Covid virus at RJD, and that she is responsible for his contracting the virus because she failed to take steps to prevent avoidable infections of inmates. (ECF No. 1 at 3.) Plaintiff tested negative for the Covid virus on December 8, 2020, at the same time an inmate named Cotton tested positive, yet Plaintiff was forced to move from RJD Facility A into quarantine in cell 133 in building 3 with inmate Cotton. (*Id*.) Plaintiff began exhibiting symptoms of Covid and tested positive on December 12, 2020. (*Id*.) He alleges Defendant RJD Warden Pollard is responsible for the procedures, policies and operations at RJD which allowed Plaintiff and Cotton to be housed together and Plaintiff to become infected. (*Id*.) He alleges that because Defendant RJD Dr. Amir Mohamed's name appears on both his and Cotton's test results, Dr. Mohamed was aware that a positive and a negative inmate were housed together in violation of RJD social distancing policies. (*Id*.)

Plaintiff filed a CDCR 602 inmate appeal on December 16, 2020, assigned Log No. 69650, which he marked "emergency appeal," and in which he stated that he contracted the Covid virus as a result of RJD's failure to protect him, that he had been housed at RJD for years without contracting the virus, that he has preexisting medical conditions which heighten the risks associated with the Covid virus including high blood pressure and high cholesterol, and requested to be released from custody and paid $300,000. (*Id*. at 14-15.) He claims that on January 9, 2021, Defendant RJD Chief Deputy Warden Buckel responded to that appeal at the second level and "arbitrarily and wrongfully": (1) failed to treat it as an emergency appeal, (2) omitted the fact that it stated that RJD's neglectful practices caused Plaintiff to contract Covid, and (3) misrepresented that Plaintiff stated he would contract Covid if he stayed at RJD rather than that he had already contracted Covid.

---

[1] "In any case in which an emergency endangering the lives of inmates of a state, county, or city penal or correctional institution has occurred or is imminent, the person in charge of the institution may remove the inmates from the institution. He shall, if possible, remove them to a safe and convenient place and there confine them as long as may be necessary to avoid the danger, or, if that is not possible, may release them." Cal. Gov't Code § 8658.

(*Id*. at 4, 19.)  On February 26, 2021, Plaintiff filed a third level appeal which was "not acknowledged by Sacramento." (*Id*. at 4.)

On March 14, 2021, Plaintiff filed a second CDCR 602 inmate appeal challenging Defendant Buckel's "unacceptable response" to his original inmate appeal.  (*Id*. at 4, 24-25.)  Plaintiff alleges Defendant Howard Mosely, the Associate Director of the CDCR Office of Appeals, arbitrarily and wrongfully treated that second CDCR 602 inmate appeal as an appeal of his original CDCR 602 inmate appeal Log No. 69650 and denied it as untimely. (*Id*. at 4.)  Plaintiff filed a third CDCR 602 inmate appeal on September 1, 2021, stating that an Inmate Request for Interview he submitted on August 16, 2021, had gone unanswered, and recounting the errors in handling his previous CDCR 602 inmate appeals. (*Id*. at 4, 27.)

The Complaint purports to state claims for violations of Plaintiff's federal constitutional rights to be housed under humane conditions of confinement and to be free from cruel and unusual punishment, to substantive and procedural due process, and to freedom of personal liberty and freedom from false imprisonment. (*Id*. at 3-5.)  He states that he is seeking to hold Defendant CDCR Secretary Allison responsible for the actions of her subordinates at RJD, is seeking to hold Defendant RJD Dr. Mohamed responsible for failing to ensure that Plaintiff was kept six feet away from inmate Cotton after Dr. Mohamed wrote the reports indicating that Plaintiff tested negative simultaneously to Cotton having tested positive, and is seeking to hold Warden Pollard responsible based on his duty to review reports of health hazards and protect the inmates at RJD.  (*Id*. at 5.)  Although not explicitly stated, it appears Plaintiff is seeking to hold Defendants Mosely and Buckel responsible for their involvement in their handling of his inmate appeals.  The Complaint seeks monetary damages only.  (*Id*. at 7.)

### C. Analysis

#### 1. Eighth Amendment claims

Plaintiff first contends he was subject to cruel and unusual punishment and housed under inhumane conditions of confinement based on allegations that he tested negative for

the Covid virus on December 8, 2020, at the same time inmate Cotton tested positive for the virus, yet Plaintiff was forced to share a cell with inmate Cotton which caused him to contract the virus.  Plaintiff alleges that Defendant Dr. Mohamed's name is on both tests and Dr. Mohamed therefore knew the two inmates should not be housed together, that Defendant RJD Warden Pollard is liable in his capacity of being responsible for inmate safety at RJD, Defendant CDCR Secretary Allison is liable in her capacity for being responsible for her subordinates at RJD, and that Defendants Associate Director of the CDCR Office of Appeals Howard Mosely and RJD Chief Deputy Warden Buckel both arbitrarily and wrongfully responded to his CDCR 602 inmate appeals.

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions."  *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012).  Whether the conditions of confinement are considered inhumane under the Eighth Amendment is measured by "the evolving standards of decency that mark the progress of a maturing society."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

"[A] prison official violates the Eighth Amendment when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety."  *Id.,* quoting *Wilson*, 501 U.S. at 302-03.  A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

With respect to the serious medical need prong of an Eighth Amendment claim, the allegations in the Complaint that Plaintiff tested positive for the Covid virus and has preexisting medical conditions which increase his health risks with respect to the virus are sufficient to survive screening required by 28 U.S.C. § 1915(e)(2).  *Watison*, 668 F.3d at 1112; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir.

1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain."); *Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. 2020) ("[N]o one questions that [the Covid-19 pandemic] poses a substantial risk of serious harm to [inmates of the California prison system].")

The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Prison officials may be held liable under the Eighth Amendment for a failure to protect prisoners only where the official shows a deliberate indifference to conditions which pose a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 833. The Eighth Amendment is violated when a prison official, acting with deliberate indifference, exposed Plaintiff to a sufficiently "substantial risk of serious harm" to his health. *Id*. at 843, citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (stating that in order to allege an Eighth Amendment violation for exposure to second-hand tobacco smoke, a prisoner must identify a defendant who is alleged to know of and deliberately disregard an unreasonable risk of serious damage to his future health).

With respect to Defendants CDCR Secretary Allison and RJD Warden Pollard who Plaintiff alleges are responsible for the failure of their subordinates to properly apply policies and procedures at RJD necessary to minimize the spread of Covid, supervisory liability is not an independent cause of action under § 1983, and Plaintiff must allege both an underlying constitutional violation and a connection between the supervisor's actions and the violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"), quoting *Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.

1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).

Plaintiff may not simply attempt to hold the supervisory Defendants liable without any factual allegations regarding their personal involvement in the alleged constitutional violation or a causal connection between their wrongful conduct and the violation.  To the extent Plaintiff claims that in their supervisory positions they should have been aware that Plaintiff and inmate Cotton simultaneously tested negative and positive respectively for Covid and should not have been housed together, or were responsible for implementing policies or procedures preventing that from happening, there are no allegations that either Defendant was actually aware of the tests and aware that the two inmates were housed together exposing Plaintiff to the virus.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976) (negligence does not state an Eighth Amendment claim); *Toguchi v Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.")

As currently pleaded, there are no factual allegations in the Complaint which, if proven true, would establish that Defendants Allison and Pollard, in conscious disregard to an excessive risk to Plaintiff's health, were aware Plaintiff and Cotton were placed in the same cell after Plaintiff tested negative and Cotton tested positive at the same time, and what actions they took, or were required to take but failed to take, which plausibly allege they were aware of and deliberately disregarded the risk associated with housing the two inmates in the same cell.  *See Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant

whose acts or omissions are alleged to have caused a constitutional deprivation."); *Starr*, 652 F.3d at 1208 ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.")  If Plaintiff wishes to proceed with an Eighth Amendment claim against Defendants Secretary Allison and Warden Pollard he must set forth factual allegations which plausibly show they had knowledge Plaintiff was ordered to be housed with inmate Cotton when Plaintiff tested negative and Cotton tested positive, and deliberately disregarded the risk associated with housing them together.  Merely alleging these Defendants are required to implement procedures, policies and operations at RJD protecting inmates from exposure to Covid without allegations that they knew of and deliberately disregarded such a risk in Plaintiff's individual case fails to state an Eighth Amendment deliberate indifference claim against them.  *Id.*; *see also e.g. Sanford v. Eaton*, 20cv792-BAM (PC), 2021 WL 1172911, at *6 (E.D. Cal. Mar. 29, 2021) ("[I]n order to state a cognizable Eighth Amendment claim against the warden, associate wardens, and the other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough" to control the spread of the Covid virus.)

For those same reasons, the Complaint also fails to state an Eighth Amendment claim against Defendants CDCR Office of Appeals Associate Director Mosely and RJD Chief Deputy Warden Buckel.  Plaintiff alleges these Defendants responded arbitrarily and wrongfully to his CDCR 602 inmate appeals, but there are no factual allegations in the Complaint which plausibly allege they were aware he was placed in a cell with an infected inmate and could have or should have prevented it from happening, that is, what actions they took, or were required to take but failed to take, which plausibly allege they were aware of and deliberately disregarded the risk associated with housing the two inmates in the same cell.  *See Toguchi*, 391 F.3d at 1057 ("Under [the Eighth Amendment's deliberate indifference] standard, the prison official must not only 'be aware of the facts from which

the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"), quoting *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 105-07 (mere negligence does not state an Eighth Amendment claim).

With respect to an Eighth Amendment claim against the remaining Defendant, Dr. Mohamed, the only factual allegation in the Complaint against this Defendant is that: "P&S (Physician & Surgeon) Amir Mohamed in connection with CDCR, has his/her name on my negative 12-08-2020 covid-19 test result mandating a 6 feet distance from others with mask.  As med. staff checked Cotton's vitals at cell no. 133, I was told I must quarantine with him so Amir Mohamed, upon info. and belief, also appears on Cotton's 12-08-2020 positive covid-19 test result taken simultaneously with mine, giving him/her knowledge that a positive and negative inmate were housed together." (ECF No. 1 at 3.)  The mere fact that Dr. Mohamed's name is on the test results for both inmates, without any factual allegation that Dr. Mohamed knew that the two inmates were to be housed in the same cell, or had an obligation to inform staff not to house them in the same cell, is insufficient to plausibly allege Dr. Mohamed was aware Plaintiff faced a substantial risk to his health and deliberately disregarded the risk associated with housing the two inmates in the same cell. *See Farmer*, 511 U.S. at 837 (a prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Hines v. Youseff*, 914 F.3d 1218, 1236 (9th Cir. 2019) (finding that defendant who had no discretion or authority relating to the alleged conduct could not be held liable under the Eighth Amendment because "[a]n official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'"), quoting *Starr*, 652 F.3d at 1205.

Accordingly, the Court *sua sponte* dismisses all Eighth Amendment claims in the Complaint against all Defendants based on a failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).  *Watison*, 668 F.3d at 1112; *Farmer*, 511 U.S. at 837.

/ / /

### 2. Due Process Claims

The allegations in the Complaint that Defendants Mosely and Buckel responded arbitrarily and wrongfully to Plaintiff's CDCR 602 inmate appeals fails to state a due process claim because inmates have no protected liberty interest in an inmate grievance process. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific grievance procedure."); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.") Thus, Plaintiff cannot assert a procedural or substantive due process claim based solely on the handling or alleged mishandling of his inmate grievances. *Id.*; *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."); *McRoy v. Roe*, 509 Fed.Appx. 660, 660 (9th Cir. 2013) (affirming dismissal of claims on screening "arising from defendants' processing of and responses to inmate's grievances because prisoners do not have a 'constitutional entitlement of a specific grievance procedure.'"), quoting *Ramirez*, 334 F.3d at 860.

Accordingly, the Court *sua sponte* dismisses all due process claims in the Complaint against all Defendants based on a failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2). *Watison*, 668 F.3d at 1112.

### 3. False Imprisonment and Personal Liberty Claims

Finally, Plaintiff alleges he is being subject to false imprisonment and that his right to personal liberty has been violated because Defendant Secretary Allison has not released him from custody pursuant to California Government Code § 8658. Assuming Plaintiff could succeed on such a claim in federal court, because he is currently incarcerated and seeks release from that incarceration, such a claim must be brought at this time in a habeas corpus action and not in a 42 U.S.C. § 1983 civil rights action. *See Nettles v. Grounds*, 830 F.3d 922, 925, 930-31 (9th Cir. 2016) (en banc) (holding that claims which would necessarily lead to immediate or earlier release from confinement lie at the core of habeas and must be brought if at all on habeas and not under 42 U.S.C. § 1983); *Wallace v. Kato*,

549 U.S. 384, 389 (2007) (noting that a 42 U.S.C. § 1983 claim for false imprisonment accrues when the alleged false imprisonment ends).

Accordingly, the Court *sua sponte* dismisses all false imprisonment and violation of personal liberty claims in the Complaint against all Defendants based on a failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2). *Watison*, 668 F.3d at 1112.

### D. Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## II. Conclusion and Orders

Good cause appearing, the Court:

1. **DISMISSES** all claims against all Defendants in the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2).

2. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants. Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint. Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.") If Plaintiff fails to amend, the Court will dismiss this action for failure to state a claim and failure to prosecute. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his

complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

3. **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for use in amending if he should choose to do so.

**IT IS SO ORDERED.**

Dated: January 6, 2022

Hon. Cathy Ann Bencivengo
United States District Judge