1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY HAMILTON, CC22MX910/CDCR #T61263,<br><br>Plaintiff,<br><br>vs.<br><br><br>KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitation, et al.,<br><br>Defendants. | Case No.:  21cv2032-CAB-AHB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MOHAMED'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [Doc. No. 43]** |

Plaintiff Danny L. Hamilton ("Plaintiff"), a state prisoner formerly incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this civil rights action under 42 U.S.C. § 1983. Plaintiff claims his federal procedural due process rights were violated because he should have been released from custody rather than subjected to the risk of exposure to the COVID virus at RJD, with which he became infected when he was housed in a cell with an inmate who tested positive for the virus at the same time Plaintiff tested negative. [Doc. No. 1 at 3-5; Doc. No. 8 at 6-20.]

## PROCEDURAL BACKGROUND

Plaintiff filed his original complaint on December 2, 2021.  [Doc. No. 1.] On January 6, 2022, this Court issued an order dismissing the complaint against all

defendants with leave to amend for failure to state a claim. [Doc. No. 3.]  On February 16, 2022, Plaintiff filed a First Amended Complaint ("FAC").  [Doc. No. 8.]  On March 10, 2022, this Court issued an order dismissing Defendant Allison without leave to amend but allowing the case to proceed as to Defendants Pollard, Buckel and Mohammed.  [Doc. No. 11.][1]  On August 10, 2022, Defendant Mohammed filed a motion to dismiss the FAC.  [Doc. No. 43.]  On October 6, 2022, Plaintiff filed an opposition. [Doc. No. 50.]  On October 18, 2022, Defendant filed a reply.  [Doc. No. 52.]

## ALLEGATIONS OF FAC

Plaintiff was an inmate at RJD. The First Amended Complaint asserts that Dr. Mohamed violated Plaintiff's constitutional rights by allowing him to remain in a cell with another inmate who had tested positive for COVID-19. [FAC at 9-14.] Plaintiff contends that Dr. Mohamed failed to instruct prison staff to ensure that Plaintiff stay six feet away from others, and that as a result Plaintiff contracted the virus from his cellmate four days into his quarantine. [*Id*. at 10-12.] He contends that Dr. Mohamed's failure to remove him from this cell violated his Eighth Amendment rights against cruel and unusual punishment. He also contends that his placement in quarantine violated his due process rights due to the restrictions imposed by such housing. [*Id.* at 19.]

Plaintiff states that, on December 8, 2020, he tested negative for COVID-19, but his cellmate tested positive. [*Id*. at 9.] He alleges that Dr. Mohamed provided the test results that prison staff delivered to Plaintiff. [*Id*. at 10.] The FAC alleges that Dr. Mohamed failed to tell medical staff that Plaintiff needed to stay six feet away from other people. [*Id*. at 10.] As a result, Plaintiff was forced to remain in a cell with an inmate who had tested positive. He alleges that he contracted the virus on December 12, 2020, and that Dr. Mohamed failed to intervene to get him different housing prior to his infection. [*Id*. at 12.] Plaintiff contends that he told an unnamed staff member that he had tested

---

[1] There is no indication on the docket that Defendants Pollard and Buckel have been served.

negative, and thus should not be housed with an infected inmate, but that this staff member told him that it was policy not to move him outside the cell. [*Id.* at 15.] Plaintiff also alleges that while he was in quarantine he was denied telephone calls and free access to roam the unit and take showers for an unspecified period of time. [*Id.*]

Defendants' conduct allegedly caused Plaintiff stress and physical illness that included headaches, loss of taste, fatigue, and muscle soreness. [*Id.* at 12.] However Plaintiff alleges no residual physical injury from his COVID-19 infection.

For relief, Plaintiff seeks permanent single-cell housing and $1,225,000 in damages. [*Id.* at 21.]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## DISCUSSION

A. Procedural Due Process.

Plaintiff contends that his placement in quarantine violated his right to procedural

due process because he was temporarily denied phone privileges, and free access to common areas and showers. Defendant contends this allegation fails to state a claim because such temporary deprivations do not constitute a significant and atypical hardship sufficient to confer a liberty interest that due process would protect.

Procedural due process requires that government action "be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam). For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 472, 484 (1995).

Inmates' liberty interests have been defined narrowly in regard to inmate housing, where the need for official flexibility and discretion is high. In defining the scope of inmates' liberty interests "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment. *Id*. at 482. This deference is magnified in regard to inmate cell placement. As the Ninth Circuit explained, "[w]hen prison officials have legitimate administrative authority, such as the discretion to move inmates from prison to prison or from cell to cell, the Due Process Clause imposes few restrictions on the use of that authority, regardless of any additional motives which are claimed to exist." *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991). That an inmate does not get the housing they desire is not dispositive, "nor is it relevant that the conditions of confinement may become less pleasant as a result." *Id*. Courts "must allow prison officials the freedom to exercise their administrative authority without judicial oversight." *Id.*

Courts have granted even wider deference in regard to prisons' management of the

COVID pandemic. Prison officials are already granted broad discretion, given that the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). But that "undertaking is particularly difficult where, as here, prison officials are grappling with a global pandemic*." Singleton v. Cal. Dep't of Corr. & Rehab*., No. 2:20-cv02958-RGK-ADS, 2020 WL 6587657, at *2 (C.D. Cal. Apr. 3, 2020). In such a situation, "[p]rison officials must … be 'accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security.'" *Id*. (*quoting Bell v. Wolfish*, 441 U.S. 520, 527 (1979)).

Here, Plaintiffs allegations that his rights were violated when he was housed in quarantine status and denied telephone and shower privileges are insufficient to implicate a liberty interest. *Sandin*, 515 U.S. at 482. In addition, to the extent Plaintiff alleges that his due process rights were violated by being placed with a COVID-positive inmate, this also fails to implicate a liberty interest, as courts have not recognized a liberty interest in being housed free of COVID-19 exposure. Any decision not to transfer Plaintiff to another cell, where he might infect another inmate or officer during transport or upon placement, would be a discretionary decision, "to preserve order in the prison and protect the safety of all inmates." *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003.) *See also Shipp v. Lobenstein*, No. 21-CV-167-JDP, 2022 WL 2438620, at *5 (W.D. Wis. July 5, 2022) (rejecting deliberate-indifference claim based on failure to separate COVID-positive inmates from their cellmates). Finally, even if Plaintiff had a liberty interest in being free from being housed in quarantine with his cellmate, he does not allege that he was deprived of any process he was due, or that Dr. Mohamed had any role in such a denial. Accordingly, Plaintiff fails to state a claim against Dr. Mohamed for violation of his procedural due process rights, and leave to amend would be futile.

B. Qualified Immunity.

Defendant alternatively argues that qualified immunity bars Plaintiff's claims for damages. Having concluded that Plaintiff has not presented the Court with a viable Due

Process claim, the Court need not decide whether qualified immunity also bars requests for damages on those claims. *See Taylor v. Barkes*, 575 U.S. 822, 824 (2015) (*per curiam*). Regarding the Eighth Amendment claim,[2] the Court finds that at this stage and based on Plaintiff's allegations, qualified immunity does not bar damages for that claim.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he [or she] is doing violates that right.' " *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (*quoting Ashcroft v. Al–Kidd*, 563 U.S. 731, 741 (2011)). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Although the COVID-19 outbreak is novel, it is decidedly not a novel proposition that prison officials cannot knowingly subject prisoners to a heightened risk of contracting a communicable disease. Existing precedent clearly establishes the right of an individual in custody to protection from heightened exposure to a serious communicable disease. *See, e.g., Helling*, 509 U.S. 25, 33 (1993) (finding that prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease" under the Eighth Amendment); *see also Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (affirming a finding of an Eighth Amendment violation where a facility housed individuals in crowded cells with others suffering from infectious diseases); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates

---

[2] This Court found the Eighth Amendment claim survived the low threshold to pass screening pursuant to 28 U.S.C. §1915A. [Doc. No. 11 at 6-7.] Defendant did not request dismissal of the Eighth Amendment claim on the grounds of failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Therefore, Plaintiff's Eighth Amendment claim remains.

for infectious diseases and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C*"); Trevizo v. Webster*, No. CV 17-5868-MWF (KS), 2018 WL 5917858, at *4 (C.D. Cal. Sept. 6, 2018) ("It is well accepted that such 'substantial risks of harm' include 'exposure of inmates to a serious, communicable disease[,]' " including MRSA); *Loftin v. Dalessandri*, 3 F. App'x 658, 663 (10th Cir. 2001) (recognizing an Eighth Amendment claim for knowingly housing the defendant in a cell with individuals who had tested positive for tuberculosis). *See also Penwell v. Strange*, No. 3:21-cv-0577-RJB-JRC, 2022 WL 33327918 (June 30, 2022) (cognizable allegations of deliberate indifference to the risk of contracting COVID-19 in a prison setting escape the qualified immunity bar)(*citations omitted*).

Here, Plaintiff claims Dr. Mohamed, in an act of deliberate indifference, "made no effort to inform the medical staff" that Plaintiff need to stay six feet away from inmate Cotton while wearing protective gear.  [Doc. No. 8 at 10-11.]  Plaintiff states that he was placed at substantial risk of serious injury by Dr. Mohammed's failure in his duty to inform RJD staff that Plaintiff tested negative because he was unvaccinated and has preexisting health problems.  [*Id.*]  As a result of sharing a cell with inmate Cotton Plaintiff was exposed to and infected with the Covid virus.  [*Id.* At 12.]  Given that the FAC plausibly alleges Dr. Mohamed knew of and deliberately disregarded a substantial risk to Plaintiff's health, at least at the pleading stage, the Court finds that qualified immunity does not apply to the Eighth Amendment claim.  However, future discovery may show that Defendant is entitled to qualified immunity. Therefore, Defendant's motion for qualified immunity as to the Eighth Amendment claim is **DENIED WITHOUT PREJUDICE.**

C.  Injunctive Relief.

Plaintiff's claim for injunctive relief, however, is now moot. *See Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) ("[W]hen a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility."). To get prospective relief, "a plaintiff must demonstrate that he has suffered or is threatened with 'a concrete

and particularized harm,' coupled with 'a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc*., 511 F.3d 974, 985 (9th Cir. 2007) (*quoting Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Here, Plaintiff is no longer housed at RJD.  In addition, Plaintiff is no longer suffering from his COVID infection and he does not allege that his current cellmate is infected with COVID-19. Therefore, his request for injunctive relief is **DISMISSED AS MOOT**.

CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the FAC is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The motion to dismiss the claim for violation of procedural due process for failure to state a claim is **GRANTED WITHOUT LEAVE TO AMEND**;

2. The motion to dismiss the Eighth Amendment claim based upon qualified immunity is **DENIED WITHOUT PREJUDICE**;

3. The motion to dismiss the request for injunctive relief is **GRANTED**.

Defendant Mohamed shall **answer** the FAC, as amended by this order, by **January 12, 2023**.

**IT IS SO ORDERED.**

Dated:  December 22, 2022

_____
Hon. Cathy Ann Bencivengo
United States District Judge