UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY L. HAMILTON,<br><br>                              Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitation, et al,<br><br>                              Defendant. | Case No.:  21cv2032-CAB-AHG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 87] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 70]** |

Plaintiff Danny L. Hamilton ("Plaintiff"), a state prisoner formerly incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this civil rights action under 42 U.S.C. § 1983. On April 6, 2023, Plaintiff filed a motion for summary judgment.  [Doc. No. 70.]  On January 5, 2024, Defendant A. Mohamed filed a motion for summary judgment. [Doc. No. 87.]  On January 26, 2024, Defendant filed an opposition to Plaintiff's motion for summary judgment.  [Doc. No. 90.]  Despite being granted an extension of time to do so [Doc. Nos. 89, 91], Plaintiff has failed to file an opposition to Defendant's motion for summary judgment, nor has he supplemented his motion or replied to Defendant's opposition to his motion. For the reasons set forth below, Defendant's motion for summary judgment is

**GRANTED** and Plaintiff's motion for summary judgment is **DENIED**.

## PROCEDURAL BACKGROUND

Plaintiff claims his federal procedural due process rights were violated because he should have been released from custody rather than subjected to the risk of exposure to the COVID virus at RJD, with which he became infected when he was housed in a cell with an inmate who tested positive for the virus at the same time Plaintiff tested negative. [Doc. No. 1 at 3-5; Doc. No. 8 at 6-20.] Plaintiff filed his original complaint on December 2, 2021. [Doc. No. 1.] On February 16, 2022, Plaintiff filed a First Amended Complaint ("FAC"). [Doc. No. 8.] On August 10, 2022, Defendant Mohammed filed a motion to dismiss the FAC. [Doc. No. 43.] On December 22, 2022, this Court issued an order granting in part and denying part Defendant Mohamed's motion to dismiss Plaintiff's FAC. [Doc. No. 55.][1] On January 31, 2023, Defendant Mohamed filed an answer to the FAC. [Doc. No. 60.]

## LEGAL STANDARD

Summary judgment is proper only upon the movant's showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Industrial Maintenance Engineering & Contracting CO.*, 200 F.3d 1223, 1229 (9th. Cir. 2000). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Id.*, citing *Anderson*, 477 U.S. at 248.

With regard to Defendant's motion, as the moving party, the initial burden of establishing the absence of a genuine issue of material fact falls on the Defendant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the Defendant can demonstrate that Plaintiff has not made a sufficient showing on an essential element of his case, the

---

[1] The remaining defendants were also dismissed. *See* Doc. Nos. 11 and 56.

burden shifts to the Plaintiff to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, the Plaintiff has not provided any evidentiary support for his motion, despite being granted an opportunity to supplement his motion. [*See* Doc. Nos. 72, 83 and 91.] Moreover, Plaintiff has not opposed Defendant's motion for summary judgment, and therefore has not challenged any of the facts asserted by Defendant as required by Fed. R. Civ. Proc. 56(c). Accordingly, the Court may consider the facts presented by Defendant as undisputed for purposes of the motion, and grant summary judgment for Defendant if the undisputed facts, and the motion and supporting papers, show that Defendant is entitled to judgment in his favor. Fed. R. Civ. Proc. 56(e)(2) & (3); *Beard v. Banks*, 548 US 521, 527 (2006) (failure to specifically challenge facts identified in moving party's statement deemed admission of those facts)(decided under former Rule)). *See also* Local Civil Rule 7.1.f.

## DISCUSSION

A. Eighth Amendment Claim.

During the COVID-19 pandemic, Richard J. Donovan Correctional Facility adopted an automated system for notifying inmates of their test results. [Doc. No. 87-2, Mohamed Decl., at ¶6, Ex. B.] Plaintiff Danny L. Hamilton, an inmate at RJD during the time period at issue, received an automated letter, endorsed by Defendant Dr. A. Mohamed, notifying Plaintiff that his COVID-19 test was negative. [Mohamed Decl., at 16, Ex. D.] Plaintiff is now suing Dr. Mohamed alleging his actions constitute deliberate indifference under the Eighth Amendment because several hours after Dr. Mohamed endorsed the letter, the test results of Plaintiff's cellmate returned positive, and Plaintiff tested positive for COVID-19 days later.

The Eighth Amendment prohibits the infliction of "cruel and unusual

punishments[.]" U.S. Const. amend. VIII. To state a plausible Eighth Amendment claim for relief, a Plaintiff must allege facts sufficient to show that Defendants acted with "deliberate indifference." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016). "A prison official acts with 'deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.' " *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)), overruled on other grounds by *Castro*, 833 F.3d at 1076. "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Toguchi*, 391 F.3d at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Neither negligence nor gross negligence is actionable under § 1983 in the prison context. *See Farmer*, 511 U.S. at 835–36, 836 n. 4.

      Prison officials have a duty to protect inmates from communicable diseases. *See e.g., Helling v. McKinney*, 509 U.S. 25, 33 (1993) (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease"); *see also Hutto v. Finney*, 437 U.S. 678, 682–83 (1978); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C"). And there is no question that COVID-19 is a serious communicable disease. *See, e.g., Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death."); *Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("The COVID-19 pandemic is 'unprecedented,' and no one questions that it poses a substantial risk of serious harm to [prison inmates]." (citation omitted)); *Burgess v. Newsom*, No. 1:21-cv-00077-SAB (PC), 2021 WL 4061611, at *4 (E.D. Cal. Sept. 7, 2021) (stating "COVID-19 is a serious communicable disease"), report and recommendation adopted by, 2021 WL 4975140 (E.D. Cal. Oct. 25, 2021).

The Eighth Amendment also protects against deliberate indifference to a prisoner's serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In the medical context, deliberate indifference in violation of the Eighth Amendment exists when a prison official knows an inmate faces a substantial risk of serious harm to his health and fails to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 847; *Toguchi*, 391 F.3d at 1058. Specifically, a plaintiff must (1) show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) show the defendant's response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference to an inmate's serious medical needs may occur in two ways: either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way that prison physicians provide medical care. *Estelle,* 429 U.S. at 104–05; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*). Deliberate indifference is shown by a "purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992)). The defendants must have known of, but disregarded, an excessive risk to the plaintiff's health. *Farmer*, 511 U.S. at 837.

Here, Defendant has presented an undisputed timeline that shows Dr. Mohamed could not have ignored an objective serious risk with deliberate indifference, as required by the Eighth Amendment. First, no objective risk of serious harm existed to Plaintiff when Dr. Mohamed provided his negative test results. On December 8, 2020, Plaintiff underwent a COVID-19 test performed by nursing staff. [Mohamed Decl., at ¶¶ 13-14; see Exhibit C. ]At that time, Plaintiff was asymptomatic. Doc. No. 87-1, Plaintiff's Deposition ("Pl. Depo."), at 56:15-17.] On December 9, 2020, Plaintiff's cellmate was also tested for COVID-19. [Doc. No. 87-4, Barenchi Decl., at ¶ 6.] Plaintiff's test result arrived at RJD two days later, on December 10, 2020 at 9:00 p.m. [Mohamed Decl., at ¶ 15.] Plaintiff's test result was negative for COVID-19. *Id*. On December 11, 2020, Dr.

1   Mohamed endorsed Plaintiff's negative test result and an automated letter was generated
2   to Plaintiff notifying him of the negative test. [Mohamed Decl., at ¶ 16; *see* Exhibit D.]
3   At that time, Dr. Mohamed was not aware of Plaintiff's other medical conditions, his
4   housing location, or the results of Plaintiff's cellmate's COVID-19 test. [Mohamed Decl.,
5   at ¶¶ 17-18.] Dr. Mohamed had no further involvement with Plaintiff's medical care in
6   December 2020. [Mohamed Decl., at ¶ 19.]  Therefore, Dr. Mohamed's notification of
7   Plaintiff's negative COVID-19 test result without further action was medically
8   appropriate as there was no evidence that Plaintiff had any heightened risk of contracting
9   COVID-19 at the time his test results were received.
10          Moreover, Dr. Mohamed's notification of Plaintiff's negative COVID-19 test
11  results did not consciously disregard a serious risk to Plaintiff's health.  Several hours
12  after Dr. Mohamed sent Plaintiff the automated letter, at 5:09 p.m. on December 11,
13  2020, Plaintiff's cellmate's test result arrived at RJD, showing he was positive for
14  COVID-19. [Barenchi Decl., at ¶ 6.] Plaintiff's cellmate was moved to quarantine by
15  custody staff approximately five hours later at 12:05 a.m. on December 12, 2020.
16  [Barenchi Decl., at ¶ 7.] Plaintiff's cellmate was notified of his positive test result by Dr.
17  Barenchi on December 14, 2020. [Barenchi Decl., at ¶ 8; Mohamed Decl., at ¶ 20; *see*
18  Exhibit F.] Therefore, the undisputed evidence shows that Dr. Mohamed had no
19  knowledge of Plaintiff's cellmate's positive test when Dr. Mohamed sent the earlier letter
20  to Plaintiff informing him of his negative test.
21          Finally, the undisputed evidence shows that Plaintiff did not suffer harm as a result
22  of Dr. Mohamed's actions.  On December 12, 2020, Plaintiff was again tested for
23  COVID-19 by nursing staff. [Mohamed Decl., at ¶ 21; *see* Exhibit C.] On December 15,
24  2020, Plaintiff's December 12, 2020 test returned with a positive result, however Plaintiff
25  was already quarantined at that time. [*Id*; Pl. Depo, at 76:16-23.] On December 16, 2020,
26  Dr. R. Zhang authored an auto-generated letter to Plaintiff informing him of his positive
27  COVID-19 test result. [Mohamed Decl., at ¶ 21; *see* Exhibit E.] Plaintiff experienced
28  COVID-19 symptoms for several days, but ultimately fully recovered. [Pl. Depo, at 77:2-

20, 102:16-19.] No doctor has told Plaintiff that his medical conditions have gotten worse because of his COVID-19 infection. [Pl. Depo, at 103:7-19.] It is unknown how Plaintiff contracted COVID-19 and therefore, he cannot show a causal connection between Dr. Mohamed's endorsement of a negative test and Plaintiff's later contraction of COVID-19 from an unknown source. Therefore, Plaintiff has not shown injury.

Accordingly, Plaintiff fails to meet the objective or subjective requirements to establish deliberate indifference under the Eighth Amendment as it relates to Dr. Mohamed.

B. Qualified Immunity.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments.... When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In deciding whether a government official is entitled to qualified immunity, the Supreme Court has articulated a two-prong approach: first, whether the officer's conduct violated a constitutional right; and second, whether the officer's conduct violated "clearly established law." *Pearson v. Callahan*, 555 U.S. 223, 232, 243-44 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). "[J]udges of the district courts ... [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id*. at 236.

Here, for the reasons set forth above, there is no constitutional violation. Even if Plaintiff could prove a constitutional violation, Dr. Mohamed is still entitled to qualified immunity as he did not violate any of Plaintiff's clearly established rights. In December 2020, health officials were regularly changing regulations and guidelines to respond to the COVID-19 pandemic. [Doc. No. 87 at 8.] Plaintiff has provided no legal authority that would have put Dr. Mohamed on notice that he was required to further investigate the medical background or the cellmate of an inmate who had tested negative for

COVID-19. Further, Plaintiff has not provided any legal authority that would suggest that Dr. Mohamed's reliance on prison policy, which he believed was being enforced by custody staff, was somehow unconstitutional. [*See* Mohamed Decl., at ¶ 23.] A reasonable person in Dr. Mohamed's position, at the time he endorsed Plaintiff's negative COVID-19 test, would have believed that all reasonable measures were being taken to prevent the spread of the virus, and thus would not have believed they were violating the Constitution. Thus, Dr. Mohamed is entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendant Dr. Mohamed's motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED**. Judgment shall be entered for Defendant and the case is **CLOSED**.

**IT IS SO ORDERED.**

Dated:  March 21, 2024

Hon. Cathy Ann Bencivengo
United States District Judge